# 15-3135(L)
## 15-3151(XAP)

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

---

**MARK I. SOKOLOW,** *et al.,*
*Plaintiffs-Appellants,*

v.

**PALESTINE LIBERATION ORGANIZATION,** *et al.,*
*Defendants-Appellees.*

---

On Appeal From The United States District Court for the Southern District of New York, Case No. 04-cv-0397 (GBD)

---

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION TO RECALL MANDATE

---

Gassan A. Baloul
Mitchell R. Berger
Alexandra E. Chopin
Aaron W. Knights

SQUIRE PATTON BOGGS (US) LLP
2550 M Street, N.W.
Washington, DC 20037
T: (202) 457-6000

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ................................................................................1

ARGUMENT ......................................................................................4

I.  Plaintiffs Have Not Shown There Are "Grave, Unforeseen Contingencies" That Warrant This Extraordinary Remedy......................................................4

  A.  This Court's Decision Was Correct When Rendered, And Does Not Justify Recalling The Mandate. ...........................................................................5

  B.  The Substantial Lapse In Time Between The Issuance of the Mandate And This Motion Is Inconsistent With This Court's Law Respecting Finality Of Judgments. ...............................................................................7

II.  ATCA Is A Prospective, Not A Supervening, Change In The Law. ............8

  A.  ATCA Does Not Apply To Pending Or Closed Cases, Like This One. .........8

  B.  ATCA Cannot Disturb A Final Judgment Without Violating Due Process And The Separation-Of-Powers Doctrine. .........................................................11

  C.  ATCA Cannot Apply Retroactively To Change The Rules By Which Personal Jurisdiction Is Assessed. .......................................................13

  D.  ATCA Violates The Unconstitutional Conditions Doctrine. .........................18

  E.  Deemed-Consent Under ATCA Violates Due Process. ................................20

  F.  ATCA Cannot Be A "Supervening Change" In The Law Because Its Applicability Depends On Hypothetical Future Events That May Not Occur.....21

CONCLUSION...................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*,
  570 U.S. 205 (2013)..................................................................................18, 19

*Baldwin v. Iowa State Traveling Men's Assoc.*,
  283 U.S. 522 (1931)...........................................................................................3

*Benjamin v. Jacobson*,
  172 F.3d 144 (2d Cir. 1999) ...........................................................................13

*Bouie v. City of Columbia*,
  378 U.S. 347 (1964)..........................................................................................15

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) ....................................................................3, 4, 20

*Bruesewitz v. Wyeth LLC*,
  562 U.S. 223 (2011)..........................................................................................10

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)........................................................................13, 14, 15, 20

*Calderon v. Thompson*,
  523 U.S. 538 (1998)....................................................................................1, 4, 5

*Carrington v. United States*,
  503 F.3d 888 (9th Cir. 2007) ....................................................................5, 6, 7

*Caterpillar Inc. v. Lewis*,
  519 U.S. 61 (1996)..............................................................................................5

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................14, 18, 19, 21

*Davis v. Lawrence-Cedarhurst Bank*,
  206 F.2d 388 (2d Cir. 1953) ..............................................................................6

*Dep't of Defense v. ACLU*,
  558 U.S. 1042 (2009)........................................................................................12

*Elections Bd. v. Wisconsin Mfrs. & Commerce*,
  597 N.W.2d 721 (Wis. 1999)................................................................15

*Frost & Frost Trucking Co. v. R.R. Comm'n*,
  271 U.S. 583 (1926)..........................................................................18

*Gavin v. Branstad*,
  122 F.3d 1081 (8th Cir. 1997) ..........................................................12

*Genuine Parts Company v. Cepec*,
  137 A.3d 123 (Del. 2016) ............................................................20, 21

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) .....................................................19, 20

*Hamdan v. Rumsfeld*,
  548 U.S. 557 (2006)...................................................................10, 17

*Holder v. Humanitarian Law Project*,
  561 U.S. 1 (2010)............................................................................16

*Johnston v. Cigna Corp.*,
  14 F.3d 486 (10th Cir. 1993) ...........................................................12

*Kaiser Aluminum & Chem. Corp. v. Bonjorno*,
  494 U.S. 827 (1990)........................................................................11

*Keene Corp. v. United States*,
  508 U.S. 200 (1993).........................................................................9

*Koontz v. St. Johns River Water Mgmt. Dist.*,
  570 U.S. 595 (2013).........................................................................19

*Landgraf v. Usi Film Prods.*,
  511 U.S. 244 (1994).................................................................9, 11, 14

*Lindh v. Murphy*,
  521 U.S. 320 (1997)........................................................................10

*Livnat v. Palestinian Auth.*,
  851 F.3d 45 (D.C. Cir. 2017)...................................................16, 17, 19

*Livnat v. Palestinian Auth.*,
No. 17-508, 2018 U.S. LEXIS 6241 (Oct. 15, 2018) ............................................ 2

*McCullough v. Virginia*,
172 U.S. 102 (1898) ...................................................................................... 11, 12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) ................................................................................ 10

*Midatlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*,
474 U.S. 494 (1986) .......................................................................................... 11

*Nixon v. Adm'r of Gen. Servs.*,
433 U.S. 425 (1977) .......................................................................................... 16

*Oneida of Thames Band v. New York*,
771 F.2d 51 (2d Cir. 1985) ................................................................................. 6

*Plaut v. Spendthrift Farm, Inc.*,
514 U.S. 211 (1995) .......................................................................... 11, 12, 13, 14

*Price v. Socialist People's Libyan Arab Jamahiriya*,
294 F.3d 82 (D.C. Cir. 2002) ....................................................................... 17, 18

*Quill Corp. v. North Dakota*,
504 U.S. 298 (1992) .......................................................................................... 17

*R.S.W.W., Inc. v. City of Keego Harbor*,
397 F.3d 427 (6th Cir. 2005) ............................................................................. 19

*Roell v. Withrow*,
538 U.S. 580 (2003) .......................................................................................... 20

*Republic of Arg. v. Weltover Inc.*,
504 U.S. 607 (1992) .......................................................................................... 17

*Sargent v. Columbia Forest Prods., Inc.*,
75 F.3d 86 (2d Cir. 1996) ........................................................................... *passim*

*Schwartz v. Merrill Lynch & Co.*,
665 F.3d 444 (2d Cir. 2011) ............................................................................. 13

*Segregated Account of Ambac Assurance Corp. v. Countrywide Home Loans Inc.*, 898 N.W.2d 70 (Wis. 2017)............................................................21

*Sokolow v. PLO*,
138 S. Ct. 1438 (2018)......................................................................7

*Stevens v. Miller*,
676 F.3d 62 (2d Cir. 2012) .............................................................5, 7

*Taylor v. United States*,
822 F.3d 84 (2d Cir. 2016) ...............................................................3

*Terral v. Burke Constr. Co.*,
257 U.S. 529 (1922)........................................................................19

*United States v. Windsor*,
570 U.S. 744 (2013)............................................................15, 16, 17

*Vartelas v. Holder*,
566 U.S. 257 (2012)......................................................................9, 14

*Waldman v. PLO*,
835 F.3d 317 (2d Cir. 2016) .........................................16, 17, 18, 19

*Wellness Int'l Network, Ltd. v. Sharif*,
135 S. Ct. 1932 (2015)....................................................................20

## Constitution

U.S. Const. amend. V...................................................................14, 16, 17

## Statutes

Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253 (Oct. 3, 2018) ..................................................................................*passim*

Antiterrorism Act, 18 U.S.C. § 2333 ...........................................................8

Foreign Assistance Act, 22 U.S.C. § 2151 ...................................................8

Taylor Force Act, Pub. L. 115-141, 132 Stat. 1143 (2018)......................22

**Other Authorities**

H.R. Rep. No. 115-858 (2018).........................................................................9

Jim Zanotti, Cong. Research Serv., RS22967, *U.S. Foreign Aid to the*
   *Palestinians* (2018) .............................................................................22

# INTRODUCTION

It has been nearly two years since the mandate issued in this appeal, and more than six months since the Supreme Court denied certiorari.  However, Plaintiffs seek to overcome the federal courts' "profound interests in repose attaching to the mandate of a court of appeals," *Calderon v. Thompson*, 523 U.S. 538, 550 (1998), because Congress recently enacted the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253 (Oct. 3, 2018) ("ATCA").  The power to recall a mandate is "one of last resort, to be held in reserve against grave, unforeseen contingencies." *Id*.

This case does not present the extreme circumstances that, on the rarest of occasions, might justify recall of a mandate.  *See Calderon*, 523 U.S. at 550 (requiring "extraordinary circumstances").  To the contrary, this Court's decision was accurate when the mandate issued—as confirmed by the Supreme Court's ensuing denial of certiorari in line with the views of the Solicitor General.[1]  *See* Br. for the United States as Amicus Curiae, *Sokolow v. PLO*, No. 16-1071 (Feb. 22, 2018).  That decision continues to be correct today, which the Supreme Court recently confirmed by denying certiorari in the look-alike case of *Livnat v.*

---

[1] Order Denying Mot. to Stay Mandate (Doc. 247) (Nov. 28, 2016); Judgment (Doc. 248) (Nov. 28, 2016); Order Denying Pet. for Rehearing *En Banc* (Doc. 233) (Oct. 19, 2016).

*Palestinian Authority*, where the petitioners made the same ATCA-based arguments that Plaintiffs emulate here.[2]

As the Palestinian Authority explained to the Supreme Court in *Livnat*, retroactive application of ATCA to undo final judgments would violate statutory-construction canons and constitutional safeguards.[3] As a matter of statutory construction, ATCA does not provide for retroactive application of its jurisdictional-consent provision to pending or closed cases. Constitutionally, retroactive application of ATCA here would violate Defendants' property interest in the final judgment (which is protected by both due process and the separation-of-powers doctrine) and their due-process liberty interest in advance fair-warning of jurisdictional rules. ATCA also violates the "unconstitutional conditions" doctrine by forcing Defendants to relinquish their jurisdictional due process objections as a condition of continued U.S. government aid.

This Court accordingly should refuse to recall the mandate, and allow these weighty statutory and constitutional law issues to be developed in future cases.

This Court views finality as nearly incontrovertible, recognizing that "the sanctity of final judgments in our federal judicial system" compels parsimonious use

---

[2] *See* Suppl. Br. of *Livnat* Petitioners, No. 17-508 (Sept. 14, 2018) (urging the Supreme Court to vacate jurisdictional-dismissal and remand based on ATCA).

[3] *See* Suppl. Br. of Respondent, *Livnat v. Palestinian Auth.*, No. 17-508, 2018 U.S. LEXIS 6241 (Oct. 15, 2018).

of its power to recall mandates. *Sargent v. Columbia Forest Prods., Inc.,* 75 F.3d 86, 89 (2d Cir. 1996) (citing *Baldwin v. Iowa State Traveling Men's Assoc.*, 283 U.S. 522, 525 (1931)). ATCA's jurisdictional-consent provision does not warrant use of that power because ATCA is not a "supervening change in governing law that calls into serious question the correctness of the court's judgment" in this case. *Sargent*, 75 F.3d at 90 (internal quotation marks and citation omitted); *accord Taylor v. United States*, 822 F.3d 84, 90 n.2 (2d Cir. 2016).

Although Plaintiffs contend that ATCA "supersede[s] this Court's decision" (Mot. at 1), there are at least six reasons why that is not so. <u>First</u>, the plain language of ATCA evinces that its jurisdictional-consent provision does not apply to pending or closed cases. <u>Second</u>, as a matter of constitutional due process and the separation-of-powers doctrine, ATCA cannot deprive Defendants of their property interest in the finality of the *Sokolow* judgment. <u>Third</u>, also as a matter of constitutional due process, ATCA cannot deprive Defendants of their liberty interest in advance fair-warning of jurisdictional rules, by which courts assess general personal jurisdiction based on forum-contacts when the lawsuit is commenced. <u>Fourth</u>, ATCA violates the unconstitutional conditions doctrine in attempting to coerce Defendants' consent to general jurisdiction as a condition of U.S. aid. <u>Fifth</u>, coerced, "deemed" consent under ATCA cannot produce the "free and voluntary" consent to general jurisdiction that *Daimler* requires, as recognized by this Court in *Brown v. Lockheed Martin*

*Corp.*, 814 F.3d 619, 638-40 (2d Cir. 2016). And, <u>sixth</u>, any attempted application of ATCA here depends on hypothetical future events that may not occur.

## ARGUMENT

### I. Plaintiffs Have Not Shown There Are "Grave, Unforeseen Contingencies" That Warrant This Extraordinary Remedy.

Recalling a mandate is an exceptional remedy, to be used only in "extraordinary circumstances." *Calderon*, 523 U.S. at 550. "The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies," because recalling a mandate violates "the profound interests in repose" that accompany final judgments. *Id*. (internal quotation marks and citation omitted). This is particularly so when, as here, a case has completed appellate review. *Sargent*, 75 F.3d at 91-92 ("[T]he presumption against the reopening of previously dismissed claims is at its heaviest where the mandate has issued.").

Motions for recall are routinely denied even in the most extreme and seemingly egregious contexts. For example, in *Calderon*, 523 U.S. at 548-49, the Ninth Circuit recalled its mandate two days before the defendant's execution, because internal administrative errors had prevented it from granting relief in that death-penalty case. The appellate court later concluded in an *en banc* decision that the defendant had been prejudiced at trial by ineffective assistance of counsel, and

vacated the sentence of death. *Id*. at 548. The Supreme Court nevertheless reversed the recall of the mandate and subsequent ruling, because "[i]n the absence of a strong showing of actual innocence, the State's interests in actual finality" prevail. *Id*. at 557 (internal quotation marks and citation omitted).

Similarly, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74-75 (1996), held that finality was the "overriding consideration" even when it allowed defendants "to profit from their disregard of Congress' instructions, and their ability to lead district judges into error." Though arguments against allowing such conduct are "hardly meritless," the Supreme Court held that "considerations of finality, efficiency, and economy" were "overwhelming" when dealing with final judgments. *Id*. at 75.

This case does not present such extremes.

A. <u>This Court's Decision Was Correct When Rendered, And Does Not Justify Recalling The Mandate</u>.

This Court does not recall mandates when, as here, its decision was correct when rendered, but the losing party seeks to upset that decision retroactively based on a new statute. Recalling a mandate requires, among other things, that "the governing law is unquestionably inconsistent with the earlier decision." *Stevens v. Miller*, 676 F.3d 62, 69 (2d Cir. 2012) (citing *Sargent*, 75 F.3d at 90). As a result, this Court consistently denies motions to recall mandates that are rooted in a change in law that does not or cannot overturn the underlying decision. *See Carrington v.*

- 5 -

*United States,* 503 F.3d 888, 892-93 (9th Cir. 2007) (denying mandate-recall that was "in essence arguing for the retroactive application" of a decision that did not apply retroactively).

For example, *Sargent*, 75 F.3d at 90, focused on whether there had been a "supervening change in governing law that calls into serious question the correctness of the court's judgment." *Id.* (internal quotation marks and citation omitted). There, this Court declined to recall a mandate to the extent that it was "not clear that [the intervening decision] altered or even clarified Vermont law <u>as it existed at the time of our earlier decision</u>." *Id*. at 91 (emphasis added). *Davis v. Lawrence-Cedarhurst Bank*, 206 F.2d 388, 389 (2d Cir. 1953), declined to recall a mandate where the decision it had deemed "decisive" in its original decision was overturned, because "the reversal was on another ground from that on which we relied." *Id.* (internal quotation marks and citation omitted). Similarly, *Oneida of Thames Band v. New York*, 771 F.2d 51, 52 (2d Cir. 1985), rebuffed an attempt to recall a mandate following a Supreme Court decision that would strip the appellate court of interlocutory jurisdiction, because there had been a "colorable jurisdictional basis" for the decision when it was rendered. *Id.* at 53 ("[W]e see no reason even to create room for doubt by reopening a judgment for which appellate jurisdiction existed at the time it was rendered.").

B. <u>The Substantial Lapse In Time Between The Issuance of the Mandate And This Motion Is Inconsistent With This Court's Law Respecting Finality Of Judgments</u>.

The interests in finality likewise make it inappropriate to recall a mandate when there is a "substantial lapse in time between the issuing of the mandate and the motion to recall." *Stevens*, 676 F.3d at 69 (citing *Sargent,* 75 F.3d at 90).

Plaintiffs' Motion seeks to recall the nearly two-year old mandate here, which issued after this Court unanimously denied Plaintiffs' request for rehearing *en banc* and separately denied Plaintiffs' request to stay the mandate pending their petition for certiorari. *See supra* n.1. The Supreme Court denied certiorari more than six months ago, in line with the views of the Solicitor General. *Sokolow v. PLO*, 138 S. Ct. 1438 (2018); Br. for the United States as Amicus Curiae, *Sokolow v. PLO*, No. 16-1071 (U.S. Feb. 22, 2018).

Appellate courts almost uniformly decline to recall their mandates in closed cases like this one. *See Carrington*, 503 F.3d at 892-93 (contrasting a "case that is still subject to the filing of a petition for a writ of certiorari" with "[t]he recognition that petitioners seek [to] recall … mandates … which have been final for years"). This general rule naturally applies with even greater force when, as here, plaintiffs argue that they may file a new action based on the same allegations. *See* Mot. at 2, 17.

**II.    ATCA Is A Prospective, Not A Supervening, Change In The Law.**

ATCA cannot satisfy the "supervening" law requirement to recall a mandate for at least six reasons.

A.    ATCA Does Not Apply To Pending Or Closed Cases, Like This One.

Plaintiffs' Motion depends on a showing that ATCA's jurisdictional-consent provision (Section 4) applies retroactively to closed cases.  But Section 4 does not apply retroactively even to pending cases, let alone to closed cases like this one in which the mandate issued long ago.  The plain language of Section 4 makes this evident, particularly when read in conjunction with ATCA's remaining provisions, which do expressly provide for retroactive application.

Section 4 of ATCA provides that a defendant in a case under the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA"), will be "deemed to have consented" to general personal jurisdiction if it continues to accept specific types of foreign assistance "after the date that is 120 days after" ATCA becomes law.[4]  Pub. L. No. 115-253, § 4(a)(e)(1)(A).  ATCA has three operative sections, each of which contains an "applicability" provision.  Plaintiffs invoke only Section 4 (the jurisdictional-

---

[4] *See* Pub. L. No. 115-253, § 4(e)(A) (specifying aid authorized in the Foreign Assistance Act of 1961, 22 U.S.C. § 2151: The Economic Support Fund and Overseas Contingency Operations; International Narcotics Control and Law Enforcement; and, Nonproliferation, Antiterrorism, Demining, and Related Programs).

consent provision) in their Motion.  Section 2(b) states that it "shall apply to any civil action pending on or commenced after the date of the enactment of this Act." Section 3(b) similarly states that it applies "to any judgment entered before, on, or after the date of enactment of this Act."  In contrast, the "applicability" provision of Section 4(b) states only that it "shall take effect on the date of enactment of this Act."

There is no explicit statement that Section 4 shall apply to lawsuits pending— let alone closed—before the enactment of ATCA.  *Id.*  Legislation applies prospectively unless Congress explicitly provides for retroactive application.  *See Vartelas v. Holder*, 566 U.S. 257, 265-66 (2012); *see also Landgraf v. Usi Film Prods.*, 511 U.S. 244, 272-73 (1994) (requiring explicit language ensures that "Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits").  Under traditional statutory-construction canons, moreover, "[w]here Congress includes particular language in one section of a statute but omits it in another…, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion."[5]  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (internal quotation marks and citation omitted).

---

[5] Congress actually amended the applicability provision of Section 4 while ATCA was under consideration, but <u>still</u> did not conform it to the express retroactivity provisions of Sections 2 and 3.  *See* H.R. Rep. No. 115-858 at 1-2 (2018) (quoting Amendment to H.R. 5954 offered by Rep. Goodlatte (June 13, 2018)); Pub. L. No. 115-253, § 4.

Therefore, because Sections 2 and 3 contain explicit retroactivity language notably absent from Section 4, "a negative inference may be drawn" about the retroactivity of Section 4.[6] *Hamdan v. Rumsfeld*, 548 U.S. 557, 578 (2006). This is particularly true when, as here, "the portions of a statute treated differently … were being considered simultaneously." *Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (holding that Congress must have intended one section of the statute to be applied to pending cases, while the other would not, because the provisions evolved together).

Plaintiffs point to ATCA's legislative history to argue that Section 4 should be construed to apply to "*any* ATA case." *See* Mot. at 13 (emphasis in original). But legislative history cannot trump the statutory text and structure actually enacted by Congress. *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 240 (2011).

If ATCA were applied retroactively, Section 4 would allow a retrospective revision of a defendant's forum-connection, and implicitly abrogate the established rule that general personal jurisdiction is assessed based solely on the defendant's connection to the forum at the time the lawsuit is commenced. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996). If Congress had

---

[6] This Court can also look to Section 4(a)(e)(1), which states that the deemed jurisdictional-consent applies "regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed." Pub. L. No. 115-253, § 4(a)(e)(1). This subsection focuses on application regardless of the <u>date of the terrorist attack</u>, but conspicuously fails to reference application regardless of the <u>date the action itself was filed</u>. *Id*.

- 10 -

intended to abrogate the settled rule that courts assess general jurisdiction based on the facts existing when a lawsuit is commenced, then it was obliged to state that intent expressly and unmistakably. *See Midatlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Beyond that settled rule, basic fairness dictates that the "the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place . . . ." *Landgraf*, 511 U.S. at 265-66 (quoting *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 855 (1990) (Scalia, J., concurring)).

B. ATCA Cannot Disturb A Final Judgment Without Violating Due Process And The Separation-Of-Powers Doctrine.

Plaintiffs proclaim that ATCA "will supersede this Court's decision," Mot. at 15, but retroactive application of ATCA Section 4 would both (1) impair Defendants' due process property interest in the final judgment in this case, and (2) violate the separation-of-powers doctrine.

Legislation cannot "take away rights which have been once vested by a judgment." *McCullough v. Virginia*, 172 U.S. 102, 123 (1898); *see also Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (holding that Congress cannot retroactively command courts to reopen judgments because "a judgment

- 11 -

conclusively resolves the case" pending appeal and it is the purview of the judiciary "to render dispositive judgments") (internal quotation marks and citation omitted). In *McCullough*, the Court held that the appeals court "properly . . . took no notice of the subsequent repeal of the act under which the judgment was obtained" because the "rights acquired by the judgment . . . were not disturbed by a subsequent repeal of the statute." 172 U.S. at 124; *see also Gavin v. Branstad*, 122 F.3d 1081, 1091 (8th Cir. 1997) ("In essence, the vested rights doctrine is really only the due process analogue of the separation-of-powers doctrine that prevents Congress from reopening final judgments of Article III courts."); *Johnston v. Cigna Corp.*, 14 F.3d 486, 490 (10th Cir. 1993) ("The [vested rights] doctrine has a due process component premised upon the acknowledgment that once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property."). Plaintiffs fail to acknowledge, much less address, this principle.[7]

Retroactive application of ATCA to undo the final *Sokolow* judgment would likewise violate the separation-of-powers doctrine. In *Plaut*, the Supreme Court emphasized that "[h]aving achieved finality […] a judicial decision becomes the last

---

[7] Instead, Plaintiffs cite to a series of irrelevant cases involving a change in statutory law prior to final judgment, and not involving constitutionally-protected due process property or liberty interests. For instance, unlike this case, *Department of Defense v. ACLU*, 558 U.S. 1042 (2009), involved a change in statutory law with immediate effect that occurred before a certiorari petition.

word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable <u>to that very case</u> was something other than what the courts said it was." 514 U.S. at 227. This Court has followed *Plaut* on multiple occasions. *See Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 454 (2d Cir. 2011) ("[A] statute that would requir[e] an Article III court to set aside a final judgment entered before its enactment would violate the constitutional principle of separation of powers.") (first alteration added) (internal quotation marks and citation omitted); *Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999) ("Under the separation of powers, Congress lacks the authority to alter a finally rendered judgment ordering the payment of money.").

"The last word of the judicial department" in this case occurred in 2016 when this Court issued its mandate, after which the Supreme Court denied certiorari in accord with the views of the Solicitor General. Due process and separation-of-powers principles bar retroactive application of ATCA to undo the final *Sokolow* judgment.

C. <u>ATCA Cannot Apply Retroactively To Change The Rules By Which Personal Jurisdiction Is Assessed</u>.

Retroactive application of Section 4 would violate Defendants' due process right to advance "fair warning that a particular activity may subject [them] to the jurisdiction" of U.S. courts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472

- 13 -

(1985) (internal quotation marks and citation omitted). This "fair warning" requirement protects a defendant's due process liberty interest by enabling a prospective defendant to shape its primary conduct in accordance with settled law. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (holding that defendants must be allowed "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit") (quoting *Burger King*, 471 U.S. at 472).

The Fifth Amendment Due Process Clause precludes retroactive application of a law, therefore, "when such application would … create a new obligation, impose a new duty, or attach a new disability, in respect to transactions or considerations already past." *Vartelas*, 566 U.S. at 266 (internal quotation marks and brackets omitted) (collecting cases).

Retroactive statutes raise these due process concerns because of the "Legislature's unmatched powers," which might enable it to "sweep away settled expectations suddenly and without individualized consideration," often for political reasons. *Landgraf*, 511 U.S. at 266-67; *accord Plaut*, 514 U.S. at 219-22 (discussing historical backdrop of the separation-of-powers doctrine, and observing that "[t]he vigorous, indeed often radical, populism of the revolutionary legislatures and assemblies increased the frequency of legislative correction of judgments").

To protect settled expectations, due process requires advance "fair warning"

- 14 -

of jurisdictional rules, before a lawsuit is commenced. *Burger King*, 471 U.S. at 472. Retroactive application of ATCA's jurisdictional-consent provision here would violate that liberty interest by deeming Defendants' after-the-fact, implied consent to jurisdiction in a pending or closed lawsuit, based solely on the continued provision of U.S. foreign assistance. *Post hoc* "deemed" consent to jurisdiction is constitutionally incompatible with the advance "fair warning" requirement, which is rooted in due process and broadly guards against risks from statutory retroactivity even beyond issues of jurisdiction. *See Elections Bd. v. Wisconsin Mfrs. & Commerce*, 597 N.W.2d 721, 735 (Wis. 1999) (holding that "a due process violation resulting from retroactive interpretation of statutory language is actually worse than a vague statute because it 'lulls the potential defendant into a false sense of security, giving him no reason even to suspect' that he might be subject to the statutory prohibition") (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)).

Plaintiffs are incorrect that, "[i]n evaluating any due process rights here, the Court defers to the judgment of the political branches." Mot. at 9. To the contrary, courts defer to Congress only with respect to due process limits on legislative power to adopt laws that confer subject matter jurisdiction on federal courts or that have extraterritorial effect (jurisdiction to prescribe), but do not defer as to due process limits on a court's jurisdiction over individual defendants (jurisdiction to adjudicate). "The power the Constitution grants it also restrains. And though

- 15 -

Congress has great authority to design laws to fit its own conception of sound national policy, it cannot deny the liberty protected by the Due Process Clause of the Fifth Amendment." *United States v. Windsor*, 570 U.S. 744, 774 (2013).

This Court recognized precisely that point when Plaintiffs argued that the ATA alone could provide jurisdiction over Defendants as a matter of legislative will: "[F]ederal courts cannot exercise jurisdiction in a civil case beyond the limits prescribed by the due process clause of the Constitution." *Waldman v. PLO*, 835 F.3d 317, 344 (2d Cir. 2016); *see also Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017) (holding that even if Congress intends that "ordinary due-process requirements would not apply," it "cannot wish away a constitutional provision").[8] For these same reasons, ATCA—like the ATA that it amends—cannot upset due process limits on jurisdiction to adjudicate.

Conflating jurisdiction to prescribe with jurisdiction to adjudicate, Plaintiffs rely on cases involving subject matter jurisdiction, where due process requires only a reasonable relationship between federal interests and the scope of the legislation. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 506 (1977). Laws governing

---

[8] Thus in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-36 (2010), the Court explained its role in safeguarding constitutionally-protected individual rights against impairment by legislation that Congress otherwise was empowered to prescribe: "[C]oncerns of national security and foreign relations do not warrant abdication of the judicial role. We do not defer to the Government's reading of the First Amendment …."

subject matter jurisdiction only amplify or limit the power of the <u>federal courts</u>; they do not impair <u>individual rights</u> protected by due process or other constitutional guarantees. *See Republic of Arg. v. Weltover Inc.*, 504 U.S. 607, 618-20 (1992) (holding that subject matter jurisdiction test under the FSIA reflects "jurisdiction to *legislate* rather than jurisdiction to *adjudicate*" and assuming that the *International Shoe* "minimum contacts" test for personal jurisdiction defines jurisdiction to adjudicate under the Fifth Amendment). Thus, in *Hamdan*, the Court observed that a statute governing <u>subject matter jurisdiction</u> usually "takes away no substantive right but simply changes the tribunal that is to hear the case." 548 U.S. at 576-77 (internal quotation marks and citation omitted).

The opposite is true with respect to <u>personal jurisdiction</u>: The right to jurisdictional due process is substantive and constitutionally protected, and Congress cannot impair that right by statute, as both this Court (*Waldman*, 835 F.3d at 344) and the D.C. Circuit (*Livnat*, 851 F.3d at 53) recognized with respect to the ATA. *Accord Windsor*, 570 U.S. at 774; *Quill Corp. v. North Dakota*, 504 U.S. 298, 305 (1992) *overruled on other grounds by South Dakota v. Wayfair Inc*., 138 S. Ct. 2080 (2018) (holding that Congress "does not . . . have the power to authorize violations of the Due Process Clause"); *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 95 (D.C. Cir. 2002) ("[I]t is well-settled that a statute cannot grant personal jurisdiction where the Constitution forbids it.") (internal quotation marks

and citations omitted).

D. <u>ATCA Violates The Unconstitutional Conditions Doctrine</u>.

Separately, ATCA cannot satisfy the supervening-law requirement because it unconstitutionally attempts to coerce Defendants into relinquishing their due process-based objection to general jurisdiction as a condition of continued U.S. government aid. Under the unconstitutional-conditions doctrine, the government "may not impose conditions which require the relinquishment of constitutional rights." *Frost & Frost Trucking Co. v. R.R. Comm'n*, 271 U.S. 583, 594, 598 (1926). Legislation thus cannot require Defendants to relinquish their due process right to be free of general jurisdiction when the PA and PLO are not "at home" in the U.S. under *Daimler*. *See Waldman*, 835 F.3d at 333-34.

ATCA's consent-to-jurisdiction provision exceeds the permitted scope of legislative power because that condition is unrelated to the previously-established legislative objectives of the foreign assistance programs referenced in ATCA (*e.g.*, economic support, narcotics control, nonproliferation). In *Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205, 214-15, 218 (2013), for example, the Supreme Court distinguished "between conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate" the exercise of constitutional rights (there, speech) "outside the contours

of the federal program itself."

The unconstitutional-conditions doctrine has been widely applied beyond the free-speech context, including as a prohibition against the "government . . . conditioning benefits on a[n] . . . agreement to surrender due process rights." *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005). ATCA's jurisdictional-consent provision fits the profile of "unconstitutional conditions cases in which someone refuses to cede a constitutional right in the face of coercive pressure." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013); *see also Terral v. Burke Constr. Co.*, 257 U.S. 529, 532 (1922) (holding that "a State may not, in imposing conditions upon the privilege of a foreign corporation's doing business in the State, exact from it a waiver of the exercise of its constitutional right to resort to the federal courts").

The "predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure the person into doing." *Koontz*, 570 U.S. at 612. That predicate is satisfied here because, even if Congress intended to do so, it cannot by statute directly eliminate Defendants' due process objections to general jurisdiction in a forum where it is not "at home" per *Daimler*. *See Waldman*, 835 F.3d at 333-34; *Livnat*, 851 F.3d at 57. "It is a bedrock principle of civil procedure and constitutional law that a statute cannot grant personal jurisdiction where the

- 19 -

Constitution forbids it." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1121 (9th Cir. 2002) (internal quotation marks and citations omitted).

E. Deemed-Consent Under ATCA Violates Due Process.

Still further, ATCA cannot satisfy the "supervening" law requirement because it unconstitutionally extracts "deemed" consent to general jurisdiction when, under *Daimler*, any such consent must be "free and voluntary." *Brown*, 814 F.3d at 638-40. Plaintiffs' own cases (Mot. at 7-8) confirm that "a litigant's consent [to jurisdiction]—whether express or implied—must still be knowing and voluntary." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015); *see also Roell v. Withrow*, 538 U.S. 580, 595 (2003) (same). The requirement of "free and voluntary" consent to jurisdiction has been central to due process jurisprudence at least since *Burger King*, where the Court held that, even when parties stipulate to dispute resolution in a particular forum, due process mandates that such consent must "have been obtained through freely negotiated agreements and are not unreasonable and unjust." 471 U.S. at 472 n.14 (emphasis added) (internal quotation marks and citation omitted).

Recent cases applying *Daimler* to state business-registration statutes confirm that compelled and deemed jurisdictional consent do not satisfy the "free and voluntary" consent requirement, and cannot replace the due process-based "at home"

test for general jurisdiction. *Genuine Parts Company v. Cepec*, 137 A.3d 123, 145-47 (Del. 2016), ruled that cases holding that registration statutes can create consent are wrongly rooted in the territorial thinking that dominated the *Pennoyer* era, when states created a "fictional basis to find them present there." By contrast, "*Daimler*'s reasoning indicates that such a grasping assertion of state authority is inconsistent with principles of due process." *Id.* at 147.

Similarly, *Segregated Account of Ambac Assurance Corporation v. Countrywide Home Loans Inc.,* 898 N.W.2d 70, 81-82 (Wis. 2017), relied on *Daimler*, 571 U.S. at 118, to hold that "[t]he shade of constitutional doubt that *Goodyear* and *Daimler* cast on broad approaches to general jurisdiction" means that "subjecting foreign corporations to general jurisdiction wherever they register an agent for service of process would reflect the 'sprawling view of general jurisdiction' rejected by the Supreme Court in *Goodyear.*"

F.  <u>ATCA Cannot Be A "Supervening Change" In The Law Because Its Applicability Depends On Hypothetical Future Events That May Not Occur.</u>

ATCA cannot be a "supervening change" in the law when it is not immediately effective and, instead, depends—as Plaintiffs concede—on hypothetical future events that may not occur, and whose outcome will not be known for months. *See, e.g.*, Mot. at 6-7 (arguing that the district court <u>will</u> have personal jurisdiction pursuant to ATCA "<u>if</u> Defendants' current conduct continues")

- 21 -

(emphasis added).

Any "deemed" consent by Defendants to personal jurisdiction under ATCA would depend on the continued availability of U.S. aid to Palestine under any of three foreign assistance programs referenced in Section 4(e)(A), and the PA's continued acceptance of such aid, months from now—"after the date that is 120 days after the enactment of th[at] subsection."[9] Evolving political circumstances leave considerable doubt as to any continued U.S. offer, or the PA's continued acceptance, of aid under the referenced programs.[10]

As a result, it is purely speculative that there would ever be a factual foundation to apply ATCA's jurisdictional-consent provision here, even if it could apply retroactively. ATCA therefore is not a "supervening change in governing law that calls into serious question the correctness of" this Court's judgment. *Sargent*, 75 F.3d at 90.

---

[9] Most U.S. assistance to Palestine goes to third-parties, not to the PA, and could not be "accepted" by the PA for purposes of ATCA. *See* Taylor Force Act, § 1002, Pub. L. 115-141, 132 Stat. 1143 (2018) ("The United States does not provide direct budgetary support to the Palestinian Authority.").

[10] *See* Jim Zanotti, Cong. Research Serv., RS22967, *U.S. Foreign Aid to the Palestinians* 4 (2018) (https://fas.org/sgp/crs/mideast/RS22967.pdf) ("The Administration has not obligated any FY2017- or FY2018-appropriated bilateral economic assistance for the Palestinians to date.").

## CONCLUSION

Plaintiffs' Motion accordingly should be denied.


Dated:           November 1, 2018            Respectfully submitted,


                                             /s/ Gassan A. Baloul
                                             Gassan A. Baloul
                                             Mitchell R. Berger
                                             Alexandra E. Chopin
                                             Aaron W. Knights
                                             SQUIRE PATTON BOGGS (US) LLP
                                             2550 M Street, NW
                                             Washington, DC 20037
                                             Telephone: 202-457-6000
                                             Facsimile: 202-457-5601

                                             gassan.baloul@squirepb.com
                                             mitchell.berger@squirepb.com
                                             alexandra.chopin@squirepb.com
                                             aaron.knights@squirepb.com

                                             *Attorneys for Defendants-Appellees*
                                             *Palestinian Authority and Palestine*
                                             *Liberation Organization*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018 the foregoing document was filed with the Clerk of the Court and served on all counsel of record via the Court's CM/ECF system.


/s/ Gassan A. Baloul
Gassan A. Baloul

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 32(g)(1), I hereby certify that the foregoing document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the document contains 5185 words. As permitted by Fed. R. App. P. 32(a)(g), this word count was made by use of the word count feature of Microsoft Word, which is the word-processing program used to prepare the document.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. App. P. 32(a)(6): This document has been prepared in proportional spaced typeface using 14-point Times New Roman typeface in Microsoft Word.

Dated:        November 1, 2018

                                                        Respectfully submitted,


                                                         /s/ Gassan A. Baloul
                                                        Gassan A. Baloul

                                                        *Counsel for Defendants Palestinian Authority and Palestine Liberation Organization*